NOT DESIGNATED FOR PUBLICATION

No. 119,831

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD E. TIMMONS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed July 10, 2020. Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood* and *Lance J. Gillett*, assistant district attorneys, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: Richard Timmons appeals his convictions for possession of marijuana with intent to distribute, possession of drug paraphernalia, and criminal possession of a weapon. After carefully reviewing the record before us, we reverse Timmons' conviction for possession of paraphernalia because the State did not present evidence that he possessed a food scale with the intent to store an illegal substance. We affirm his remaining convictions. And we vacate Timmons' sentence and remand the case to correct a sentencing error, as both parties agree that Timmons' criminal history was calculated incorrectly.

1

Detective Greg Feuerborn of the Wichita Police Department was staking out a house looking for a suspect who had allegedly been involved in a shooting when a maroon Mitsubishi Eclipse pulled into the driveway. Two men—Richard Timmons and Traytwon Legreg Fowler—left the house and got in the car. Detective Feuerborn followed the Mitsubishi and, after observing two traffic infractions, requested patrol officers pull the car over.

Officer Ryan Hudgins responded to the call and stopped the car. The officer immediately smelled marijuana as he walked up to the car. He asked for identification from the driver and front-seat passenger, returned to his patrol car, and ran a records-check for warrants. He then contacted Detective Feuerborn. Once backup arrived, Officer Hudgins returned to the Mitsubishi and asked the occupants to get out of the car so he could search it in light of the marijuana odor. As Timmons, who was sitting in the front passenger seat, got out of the car, Officer Hudgins noticed a folding pocketknife attached to his belt. Officer Hudgins took the knife from Timmons, who then handed over a foldout corkscrew that had a small blade on it.

When the officers searched the car, they found two clear plastic bags (both with one corner torn off) and a black backpack on the back seat containing marijuana and a digital scale. The officers arrested Timmons for criminal possession of a weapon for carrying the pocketknife and corkscrew and possession of paraphernalia for the scale and two baggies. The officers also arrested Fowler.

Later that day, Detective Feuerborn obtained a search warrant for the house Timmons and Fowler had exited. The officers who executed the warrant noted a strong smell of marijuana coming from the house's ventilation system. And once inside the house, the officers found several bags full of marijuana, a digital scale, a glass pipe, and

Timmons' identification. One of the bags of marijuana had Timmons' partial thumbprint on it.

The State initially charged Timmons with one count of criminal possession of a weapon and one count of possession of drug paraphernalia. But while Timmons was in jail pending trial, he made phone calls to two women, asking them to move "my weed" out of the house. Based on those phone calls, the State filed an amended complaint, charging Timmons with possession of marijuana with the intent to distribute; possession of paraphernalia with the intent to distribute; criminal possession of a weapon; and possession of paraphernalia with the intent to store, contain, conceal, or introduce marijuana into the body.

The case against Timmons proceeded to trial. Fowler—who was jailed with Timmons and ultimately pleaded to possession of marijuana stemming from the same incidents—testified that all the drugs in the house belonged to him, not Timmons, and that he had asked Timmons to make the phone calls from the jail. The jury ultimately found the State had not proved Timmons had possessed drug paraphernalia with the intent to distribute. But the jury found Timmons guilty of possession of marijuana with the intent to distribute, criminal possession of a weapon, and possession of paraphernalia with the intent to store, contain, conceal, or introduce marijuana into the body.

Before sentencing, the State submitted a presentence investigation report, indicating Timmons had a criminal-history score of C. Timmons objected, arguing this history misclassified a previous conviction as a person instead of a nonperson felony. The court overruled his objection. Timmons received a controlling sentence of 68 months in prison and 36 months of postrelease supervision.

DISCUSSION

Timmons' appeal challenges his three convictions in several respects. *First*, Timmons challenges his conviction for possession of drug paraphernalia, arguing the State did not present evidence to support the charge and the court did not properly instruct the jury on the elements of the crime. *Second*, he claims he should receive a new trial on the possession of marijuana charge, asserting the district court erroneously instructed the jury on an aiding-and-abetting theory. *Third*, Timmons challenges both the evidence and the instructions leading to his conviction of criminal possession of a weapon. *Fourth*, he maintains the verdict form submitted to the jury violated his right to a fair trial.

Having reviewed each of these arguments, we agree that the evidence was insufficient to convict Timmons of possession of drug paraphernalia, a misdemeanor, and reverse that conviction. We affirm Timmons' other convictions. And Timmons and the State agree his criminal-history score should be classified as an E, not a C, under Kansas Supreme Court precedent, so we remand the case for resentencing to correct this error.

1. *We reverse Timmons' conviction for possession of drug paraphernalia.*

Timmons challenges his conviction for possession of drug paraphernalia on two grounds. He argues the State did not present sufficient evidence to convict him of that crime in the manner the State chose to charge the offense. He also claims the court failed to instruct the jury that its verdict must be unanimous as to all elements of the crime. Because the evidence was insufficient to show Timmons possessed scales with the intent to store, contain, conceal, or introduce marijuana into the body—the crime the State charged he had committed—we do not reach his challenge to the court's instructions. Instead, we reverse his conviction.

When a defendant challenges the sufficiency of the evidence in a criminal case, appellate courts review all the evidence at the jury's disposal in a light most favorable to the prosecution. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). For the evidence to be sufficient, "there must be evidence supporting each element of a crime." *State v. Kettler*, 299 Kan. 448, 471, 325 P.3d 1075 (2014). We will not set aside a conviction for insufficient evidence so long as we "'[are] convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *Chandler*, 307 Kan. at 668. We do not reweigh evidence, resolve evidentiary conflicts, or make determinations on witness credibility. 307 Kan. at 668.

A jury must unanimously agree the defendant committed the charged crime before it can find a defendant guilty of that offense. See K.S.A. 22-3421; *State v. Brooks*, 298 Kan. 672, 677, 317 P.3d 54 (2014). Here, the court instructed the jury on two crimes relating to Timmons' possession of paraphernalia, both stemming from the scales and baggies found in the car and house:

- possession of "digital scales and baggies" with the intent to distribute marijuana, a felony, and

- possession of "digital scales and baggies" with the intent to "store, contain, conceal, or otherwise introduce [marijuana] into the body," a misdemeanor.

The jury did not find Timmons had committed the felony but found him guilty of the misdemeanor offense. The question now before us is whether the State introduced sufficient evidence to convict Timmons of that crime—that is, whether he (1) possessed "digital scales and baggies" (2) with the intent to "store, contain, conceal, . . . or . . . introduce" marijuana "into the human body." See K.S.A. 2019 Supp. 21-5709(b)(2).

The State presented evidence of the first of these elements—that Timmons possessed digital scales and baggies. At trial, Timmons contested the State's allegation that he possessed the scale found during the car stop, but an officer testified that Timmons could have easily reached back from the front seat and accessed the bag containing the scale. Timmons presented his argument to the jury, who apparently found the officer's testimony to be credible; we do not reweigh the evidence or redetermine credibility. See *Chandler*, 307 Kan. at 668. With regard to the baggies, the State presented two Ziploc bags found in the Mitsubishi—one under the front passenger seat where Timmons had been sitting and one in the passenger side door. Both bags had the bottom corner torn off and were accessible to Timmons. The State also produced pictures of a box of sandwich bags next to a digital scale found in Timmons' house. This evidence, when viewed in the light most favorable to the State, was sufficient to show Timmons' possession.

But because the State decided to charge Timmons with possessing both types of paraphernalia—the scales *and* the baggies—in a single count, it was required to present evidence that he possessed both with the intent to "store, contain, conceal, or introduce" marijuana "into the body." Accord *State v. Judd*, No. 112,606, 2016 WL 2942294, at *3 (Kan. App. 2016) (unpublished opinion) (observing that the court's reversal was guided by the "unusual" circumstance that the State "charged only one count of possession of paraphernalia, lumping together [a] grinder and [an] altered plastic bottle as a single offense"). In other words, there must be evidence that Timmons possessed baggies with the intent to store, contain, conceal, or consume marijuana *and that he possessed scales with that same intent*. There is not.

Timmons argues the State presented no evidence that he possessed either digital scale with the intent to store, contain, conceal, or consume marijuana. Instead, the State's witnesses discussed how scales are frequently used by dealers to weigh out drugs to prepare them for sale—that is, with the intent to distribute the drugs. An officer testified

6

that the close proximity of the scales and baggies, in the car and the house, suggested Timmons was selling marijuana. But the jury apparently did not find this testimony compelling, as it found Timmons had not possessed paraphernalia with the intent to distribute. The State introduced no evidence that Timmons possessed the digital scales for any other purpose.

On appeal, the State argues that a scale can be used to "store" or "contain" marijuana in that a person might place drugs on top of the scale for some period of time. But we do not find this argument persuasive. Indeed, taken to its logical end, the State's argument would indicate any surface—such as a table or a counter—could be construed as drug paraphernalia. We do not believe the legislature intended such a sweeping application of K.S.A. 2019 Supp. 21-5709(b)(2). See *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014) (courts construe statutes to void unreasonable or absurd results).

The State presented no evidence here that Timmons possessed the digital scales with the intent to store, contain, conceal, or consume drugs. We thus reverse Timmons' conviction for possession of paraphernalia under K.S.A. 2019 Supp. 21-5709(b)(2).

2. *The court's aiding-and-abetting instruction was factually and legally appropriate.*

Timmons next argues the district court erred by giving an aiding-and-abetting instruction concerning the possession of marijuana offense. That instruction stated:

"A person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids another to commit the crime or procures another to commit the crime.

"The person is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the person could reasonably foresee the

7

other crime as a probable consequence of committing or attempting to commit the intended crime.

"All participants in a crime are equally responsible without regard to the extent of their participation. However, mere association with another person who actually commits the crime or mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime."

Timmons objected to the court's instruction at trial. Thus, our review involves a two-step analysis. We first consider whether the instruction was legally and factually appropriate. If the instruction was erroneously given, we must decide whether that error requires reversal. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016); *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

A jury instruction "'must always fairly and accurately state the applicable law.'" *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016). Timmons acknowledges the aiding-and-abetting instruction given is identical to PIK Crim. 4th 52.140 and is an accurate statement of Kansas law. But Timmons asserts the instruction did not apply in this case—that is, he argues the instruction was factually inappropriate.

An aiding-and-abetting instruction is factually appropriate if, from the totality of the evidence, the jury could reasonably conclude the defendant aided and abetted another in the commission of the crime. *State v. Holt*, 285 Kan. 760, Syl. ¶ 7, 175 P.3d 239 (2008); see *State v. Francis*, 282 Kan. 120, 144, 145 P.3d 48 (2006). When determining whether such an instruction was factually warranted, we "employ[] an unlimited review of the entire record." *Williams*, 295 Kan. 506, Syl. ¶ 4.

In order to be guilty under an aiding-and-abetting theory, "'a defendant must willfully and knowingly associate himself with the unlawful venture and willfully participate in it as he would in something he wishes to bring about or to make succeed.'" *State v. Llamas*, 298 Kan. 246, 253, 311 P.3d 399 (2013). "'[W]hen a person knowingly

8

associates with an unlawful venture and participates in a way that demonstrates willful furtherance of its success, guilt as an aider and abettor is established.'" *State v. Betancourt*, 299 Kan. 131, 134, 322 P.3d 353 (2014).

Here, the State's primary theory of the case was that Timmons acted alone in the possession of marijuana with intent to distribute. But the evidence presented at trial also reasonably supported a conclusion that he had acted in concert with Fowler to distribute those drugs. Timmons and Fowler lived together in the house where the marijuana was recovered, and both men had equal access to all areas of the residence. And the evidence surrounding the calls Timmons made from the jail—asking two women to retrieve marijuana he had hidden around the house—also supports the conclusion that the pair acted in concert or, at the very least, that Timmons knowingly associated and participated in the crime.

During those calls, Timmons described with some particularity the quantity of marijuana in the house: "Altogether I got about 32 ounces of weed that's 2 pounds, that's $6,500 dollars' worth of weed." Timmons stated the drugs were located inside a speaker and in a bag in a cabinet—the locations where the police discovered the marijuana. But Fowler testified that all the marijuana found in the house was his—not Timmons'—and explained that he told the police where it was located throughout the house. Fowler said he had asked Timmons to recruit someone to retrieve the marijuana before the police could find it.

This somewhat conflicting evidence could reasonably support several conclusions: (1) The marijuana was Fowler's and Timmons was attempting to help him move it out of their house, (2) the marijuana was Timmons' and Fowler was trying to cover for him after taking a plea in his own case, or (3) the two men were acting in concert and both had equal control over the marijuana in their home. Regardless of which theory was the truth, the evidence reasonably supported the conclusion that the two men were working

9

together or that Timmons willfully participated in Fowler's unlawful venture. As such, the aiding-and-abetting instruction was factually appropriate.

Because the aiding-and-abetting instruction was legally and factually appropriate, the district court did not err in providing that instruction to the jury.

3. *We affirm Timmons' conviction for criminal possession of a weapon.*

Timmons brings two challenges to his conviction for criminal possession of a weapon. He first asserts the State did not present sufficient evidence to support his conviction. He also contends the court's instruction for the charge was clearly erroneous because it failed to instruct the jury on the statutory definition of a "knife."

In order to convict Timmons of criminal possession of a weapon, the State was required to prove that, at the time of the incident, he knowingly possessed a weapon— here, a knife—and had been convicted of a felony that prohibits the possession of a weapon within the previous five years. See K.S.A. 2019 Supp. 21-6304(a)(2). Timmons stipulated to his previous felony conviction. But he claims the two knives the State presented to the jury—the folding knife and the corkscrew with a foil-cutting knife attached—did not fall within the definition of a "knife" prohibited under K.S.A. 2019 Supp. 21-6304(c)(1). We disagree.

K.S.A. 2019 Supp. 21-6304(c)(1) defines "knife" for purposes of criminal possession of a weapon as "a dagger, dirk, switchblade, stiletto, straight-edged razor or any other dangerous or deadly cutting instrument of like character." The State presented evidence that the officer who stopped the Mitsubishi immediately saw the folding knife on Timmons' belt when he stepped out of the car. When the officer told Timmons to hand it over, Timmons also gave him the corkscrew with the foil cutter he had in his pocket. The State submitted these items into evidence. In the calls Timmons made from jail, he

10

acknowledged he "walked out the door [of the house] with a damn pocket knife . . . and you know me being a convicted felon, I'm not supposed to have those."

Timmons does not refute any of this evidence. Rather, he contends the folding knife and corkscrew were not "knives" within the meaning of the statute. We disagree. A juror could certainly look at the folding knife and the foil cutter and conclude these were dangerous or deadly cutting instruments of like character to those listed in the statute; that is, they could "inflict injury," have "at least one sharp edge," and are "capable of being used as a weapon." See *State v. Lucas*, No. 120,510, 2020 WL 1484484, at *2 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* April 16, 2020. Indeed, Timmons himself was aware that he carried the knives in violation of the law. Thus, the State produced sufficient evidence for a rational fact-finder to conclude beyond a reasonable doubt that Timmons possessed a knife in violation of K.S.A. 2019 Supp. 21-6304(a)(2).

Perhaps recognizing the strength of the evidence against him on this charge, Timmons also argues for the first time on appeal that he should receive a new trial based on an instructional error. Specifically, he claims the district court erred by not instructing the jury on the statutory definition of a knife under K.S.A. 2019 Supp. 21-6304(c)(1).

There can be no serious question that the statutory definition of a "knife," which explains one of the elements of criminal possession of a weapon, was legally and factually appropriate in this case. See *Johnson*, 304 Kan. at 931. The definition of a "knife" is included in the pattern jury instructions for that offense. See PIK 4th Crim. 63.040. Kansas courts "'strongly recommend the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). The better practice certainly would have been to provide the statutory definition of a "knife" as part of the instruction here.

But there are two reasons the failure to provide the jury with that definition does not require reversal—one practical and one legal. First, the instruction Timmons proposed concerning criminal possession of a weapon, though slightly different from the instruction the court ultimately gave, also lacked the statutory definition of "knife." The proposal of an erroneous jury instruction does not preclude an appellate court's review if the instruction was clearly erroneous unless the defendant "'actively pursues'" an instruction that is "'later argued to be an error.'" *State v. Cottrell*, 310 Kan. 150, 162, 445 P.3d 1132 (2019); see K.S.A. 2019 Supp. 22-3414(3). We do not believe Timmons proposal of an instruction that did not include the definition of "knife" is an active pursuit of that instruction. But Timmons' failure to include the definition in his proposed instruction is indicative of his previous practical recognition that the knives he possessed fell within the scope of the statute.

From a legal standpoint, the failure to define "knife" in the instruction does not undermine our confidence in the jury's verdict. The evidence at trial was overwhelming that Timmons possessed both the folding knife and the foil cutter, and Timmons himself recognized that these knives fell within the statutory definition. See *Neder v. United States,* 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (failure to instruct on an element of a crime is harmless when the evidence is overwhelming); *State v. Daniels*, 278 Kan. 53, 62-63, 91 P.3d 1147 (2004) (same). As in *Daniels*, the evidence in this case regarding Timmons' possession of the knives was "essentially uncontroverted." 278 Kan. at 63. As such, the court's omission of the statutory definition of "knife" does not require reversal.

4. *The verdict form did not violate the presumption of Timmons' innocence*.

Timmons points out that the verdict form placed the line where the jury could find him "guilty" above the line where the jury could find him "not guilty." Timmons contends this form, which mirrored PIK Crim. 4th 68.110 (2018 Supp.), inverted the

presumption of innocence under the Sixth and Fourteenth Amendments to the United States Constitution. Our review of the legality of a verdict form is unlimited. See *Johnson*, 304 Kan. at 931-32.

Courts have traditionally reviewed a verdict form using the same standard we use to analyze jury instructions because the verdict form is part of the packet sent to the jury with the jury instructions, once those instructions have been given by the court. *Unruh v. Purina Mills*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009). We note, however, that a verdict form is not a jury instruction. The two serve different purposes. The verdict form does not instruct the jury on the laws it will apply. The jury merely uses that form—once it has reached a decision—to record its decision on each count, claim, or question presented. Given this difference, we question Timmons' underlying contention that the arrangement of "guilty" and "not guilty" on the verdict form could cause the jury to disregard the court's instructions on the burden of proof.

More to the point, Timmons acknowledges that our Kansas Supreme Court rejected his position in *State v. Wesson*, 247 Kan. 639, 652-53, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), *disapproved on other grounds by State v. Rodgers*, 282 Kan. 218, 144 P.3d 625 (2006). But he claims *Wesson* was wrongly decided.

This court is duty-bound to follow Kansas Supreme Court precedent unless the court has indicated it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). For nearly 30 years, both this court and our Kansas Supreme Court have consistently applied the holding in *Wesson*. See *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004); *State v. Vargas*, No. 119,741, 2019 WL 5485179, at *5 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* November 20, 2019; *State v. Pack*, No. 110,467, 2015 WL 1513974, at *5 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. 1018 (2015). We have no reason to conclude that our

Supreme Court will retreat from its holding. The district court did not err in using the PIK jury verdict form.

5. *We remand for resentencing based on a corrected criminal-history score.*

Timmons and the State agree that his sentence was rendered based on an incorrect criminal-history score. Namely, the court classified Timmons' prior conviction for failure to register as a person felony, but when Timmons committed his current crimes, it was a nonperson offense. See *State v. Keel*, 302 Kan. 560, 590, 357 P.3d 251 (2015). Thus, Timmons' conviction for failure to register should have been scored as a nonperson felony, changing Timmons' criminal-history score from C to E. Accordingly, we vacate Timmons' sentence and remand for resentencing to correct this error.

In sum, we reverse Timmons' conviction for possession of paraphernalia. We affirm his convictions for possession of marijuana with intent to distribute and criminal possession of a weapon. And we vacate Timmons' sentence and remand for resentencing consistent with this opinion.

Affirmed in part, reversed in part, sentence vacated, and case remanded for resentencing.

\* \* \*

ATCHESON, J., concurring:  I concur in the result the majority reaches in reversing Defendant Richard E. Timmons' conviction for possession of drug paraphernalia for insufficient evidence; reversing, vacating, and remanding for resentencing with the correct criminal history score; and otherwise affirming the jury's verdicts.